## JOHNSON *vs.* GORMAN.

1. When an overseer comes to the house of his employer drunk, the employer is justifiable in refusing to turn over into his hands his plantation and property.

2. If an overseer demands additional stipulation to his original agreement, to the effect that the employer is to divest himself of all control and authority over his negroes, the owner is excusable for declining the engagement.

3. If the employer, within a reasonable time, offers to allow the overseer to enter upon his duties, and he refuses, suggesting as an excuse that he has made other arrangements, it is for the overseer to support the suggestion by proof.

Assumpsit, in Talbot Superior Court. Tried before Judge WORRILL, at March Term, 1860.

This was an action of assumpsit, brought by William F. Johnson against John B. Gorman to recover the sum of three

Johnson *vs.* Gorman.

hundred and fifty dollars, the amount agreed to be paid by defendant to plaintiff for overseeing for the year 1858. The declaration alleged that plaintiff was ready, and offered to perform his part of said agreement, but that defendant refused to permit plaintiff to enter upon his premises and to perform and execute the contract aforesaid, and refused to pay him the amount or sum of money agreed to be paid to him as aforesaid, whereby plaintiff was damaged five hundred dollars.

Upon the part of the plaintiff, Jesse Nelson testified: That about the last of December, 1857, or the first of January, 1858, he met up with plaintiff, who requested him to go with him to the house of defendant. When they got there, plaintiff called defendant out to the gate and demanded of him his negroes to go to overseeing for him. Defendant refused to let plaintiff have his negroes, saying that no such man could oversee for him; that he, plaintiff, had come furiously to oversee in a drunken frolic. Plaintiff did not deny this charge, but turned and rode off. Plaintiff told witness that he had moved to defendant's the evening before to commence overseeing for him, and defendant had refused to let him commence; that he had been that morning to town to consult a lawyer about what he must do.

Defendant introduced Abner M. House, who swore that on the 3d January, 1858, he went with defendant to his house where plaintiff was; defendant said to the plaintiff, that when he came there a few days before to set in to oversee, that he acted in a very unbecoming and boisterous manner to defendant. Plaintiff did not deny the charge. Defenant then said to him, that notwithstanding his unbecoming conduct, he was willing to pass it over if he, plaintiff, would go on and attend to his business as an overseer, as he had agreed to do (which agreement was admitted to be in writing.) Plaintiff declined to do so, unless defendant would give up to him the plantation, negroes and stock to his entire and exclusive control and management, which defendant refused, as not being the contract between them. Plaintiff then said he would not oversee. Defendant then agreed to leave it to men to say who had violated the contract, as they had agreed to do, which plaintiff declined to do.

James Gorman a son of defendant, swore that he was at defendant's when his wagon moved plaintiff and his family.

to the plantation; commenced overseeing for him about the last of December, 1857, or first January, 1858; plaintiff was drunk.

William A. Jones, for plaintiff, swore that he knew him, and did not regard him as a common drunkard; believes him to be a good overseer; that he rented a farm and worked it during 1858, and made from one hundred to one hundred and fifty dollars; plaintiff had followed overseeing six or seven years, and understood the business well; was a good overseer.

Here the evidence closed.

Plaintiff's counsel argued, or stated to the jury, that they could deduct from the damages sustained by defendant's breach of the contract, the amount he had made on his farm in the year 1858.

The Court charged the jury, who found for the plaintiff $196 75.

Defendant moved for a new trial on various grounds. The Court granted the motion and ordered a new trial, on the ground that the verdict was against the evidence. To which order, granting a new trial, counsel for plaintiff excepted, and assigns the same as error.

SMITH and BETHUNE, for plaintiff in error.

A. G. PERRYMAN & W. A. LITTLE, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

We agree with the Circuit Judge, that the verdict in this case was strongly and decidedly against the weight of the testimony, coming in the condition that Johnson did, who condemns Gorman for refusing to allow him to enter upon his duties?

The proof is, that Johnson is a good overseer, and that he is not a common drunkard. And it may be that there are men who get drunk occasionally, and yet, in the main, discharge their duties well. Still, I insist that any planter is justifiable in refusing to turn over his plantation and property into the hands of an overseer drunk at the time. It was a very bad beginning, to say the least of it.

After taking professional advice, Johnson returned, but refused then to perform his contract, unless Gorman would agree to divest himself of all authority and control over his estate, and commit it to his sole dominion and mastery. This Gorman properly refused to do. His negroes were a trust committed to his hands, and he could no more divest himself of his superintendence over them than he could over his children.

It is suggested in argument that when Gorman offered to permit Johnson to enter upon the fulfilment of his contract, that he might have made other engagements. If so, it was an affirmative fact, which Johnson could have proven in justification of himself, for declining to do so, but one which Gorman could not disprove negatively.